1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**

7

**DISTRICT OF NEVADA**

8

SHANNON PARKER,                                    )
                                                   )
9              Plaintiff,                           )
                                                   )
10        v.                                        )          3:12-cv-126-RCJ-VPC
                                                   )
11                                                 )          **ORDER**
          BANK OF AMERICA, NA, *et al.*,           )
12                                                 )
               Defendants.                         )
13                                                 )
          _____ )
14

15            Currently before the Court is a motion to dismiss (#13) for failure to state a claim filed

16        by Defendants Bank of America, N.A.; Federal Home Loan Mortgage Corporation ("Freddie

17        Mac"); and ReconTrust Company, N.A. (collectively "Defendants").  For the following reasons,

          the Court grants in part and denies in part the motion to dismiss (#13).
18

19                                           **BACKGROUND[1]**

20            Plaintiff Shannon Parker purchased real property located at 3085 Rowland Road, Reno,

21        Nevada 89509 (the "Property") on July 25, 2007.  (Deed (#13-1)).  To finance the purchase

22        of the Property, she obtained a $263,000 loan from Countrywide Bank, FSB, which was

23        secured by a deed of trust (the "Deed of Trust").  (Deed of Trust (#13-2) at 2).  The Deed of

24        Trust named Countrywide Bank as lender, ReconTrust Company as trustee, and Mortgage

25            _____

26            [1] Defendants have attached several copies of relevant publicly recorded documents to

27        their motion to dismiss.  (*See* Exs. (#13-1 through -8)).  The Court takes judicial notice of these

          public records.  *See Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861,
28
          866 n.1 (9th Cir. 2004) (the court may take judicial notice of the records of state agencies and

          other undisputed matters of public record under Fed. R. Evid. 201).

1    Electronic Registration Systems, Inc. ("MERS") as nominee and beneficiary.  (*Id.*).

2        On March 12, 2009, MERS substituted The Cooper Castle Law Firm as trustee of the

3    Deed of Trust.  (Substitution of Trustee (#13-3)).  MERS then assigned all beneficial interest

4    in the Deed of Trust to Countrywide Home Loans Servicing, LP on the same day.  (Assignment

5    (#13-4)).

6        Plaintiff defaulted on the loan secured by the Deed of Trust in November 2008 and The

7    Cooper Castle Law Firm recorded a notice of default on June 8, 2009.  (Notice of Default (#13-

8    5); Compl. (#1-1) at 2-3.  Plaintiff sought to modify her mortgage pursuant to the Making

9    Homes Affordable ("MHA") guidelines and directives.  (Compl. (#1-1) at 2-3).  In July 2009,

10   Plaintiff applied for a mortgage modification and entered into a trial period plan pursuant to the

11   MHA guidelines and directives setting her monthly mortgage payments at $1,482.01.  (*Id.* at

12   3).  Plaintiff timely remitted all monthly mortgage payments through the trial period.  (*Id.*).

13       Despite the fact that Plaintiff made all of her monthly payments as required and

14   Defendants accepted these payments, she was given an offer for a final modification on

15   December 30, 2009 with monthly payments of $1,856.16 rather than the $1,482.01 previously

16   agreed upon during the trial period.  (Compl. (#1-1) at 2-3).  As the payments were

17   approximately $400.00 higher than her payments under the trial plan, Plaintiff contacted Bank

18   of America in January 2010 and spoke with representative Lencol Metayer. (*Id.* at 3). Metayer

19   instructed her not to remit any payments pursuant to the final modification until further notice

20   and that she would remedy the issue regarding the high payments.  (*Id.*).

21       The issue with the monthly payment amount was never remedied and Plaintiff did not

22   cure the default.  A notice of trustee's sale was then recorded by The Cooper Castle Law Firm

23   on July 25, 2011.  (Notice of Trustee's Sale (#13-6)).  The sale date was postponed until

24   November 30, 2011 and Plaintiff was offered a traditional modification on August 17, 2011 with

25   monthly mortgage payments of $1,710.73 and a down payment of $3,907.75 to secure the

26   modification.  (Compl. (#1-1) at 3).  Plaintiff rejected this offer and again and attempted to

27   obtain a loan modification with payments closer to what she had remitted during the trial

28   period.  (*Id.* at 3-4).

1    Plaintiff again applied for a loan modification pursuant to MHA guidelines, but was told

2  she did not qualify because she failed to accept the final MHA loan modification offered her

3  in December 2009.  (Compl. (#1-1) at 3-4).  The Property was then sold at a trustee's sale for

4  $180,000 to Jerry McMillen on November 30, 2011.[2]  (Trustee's Deed (#13-7)).

5    After the Property was sold, Plaintiff spoke with a Bank of America relationship manager

6  and was told that she did not qualify for an MHA modification because she did not have

7  enough income to support the modification.  (Compl. (#1-1) at 4).  Plaintiff was later told by the

8  executive office of Bank of America that the income used in determining whether she qualified

9  for a modification was $3,074.00.  (*Id.*).  This was apparently lower than her actual income and

10  allegedly if her actual income had been used she would have qualified for the loan

11  modification pursuant to MHA guidelines.  (*Id.*).

12    Plaintiff filed a complaint in Nevada state court on January 5, 2012 against Bank of

13  America (as successor by merger to Countrywide), Freddie Mac, ReconTrust, and Jerry

14  McMillen.  (Compl. (#1-1) at 1).  The complaint alleges seven causes of action, including: (1)

15  fraud in the inducement; (2) intentional misrepresentation; (3) negligent misrepresentation; (4)

16  violation of NRS § 107.080 and wrongful foreclosure; (5) breach of contract; (6) tortious breach

17  of the implied covenant of good faith and fair dealing; and (7) contractual breach of the implied

18  covenant of good faith and fair dealing.  (*Id.* at 5-10).  Defendant Jerry McMillen was

19  voluntarily dismissed by Plaintiff from this action with prejudice on May 23, 2012.  (Stipulation

20  (#12); Order (#21)).

21    Defendants filed a motion to dismiss for failure to state a claim and to expunge lis

22  pendens on April 11, 2012.  (Mot. to Dismiss (#13)).  Plaintiff filed an opposition to the motion

23  to dismiss on May 13, 2012 and Defendants filed a reply on May 23, 2012.  (Opp'n to Mot. to

24  Dismiss (#20); Reply (#22)).  A hearing was held before the Court on the motion to dismiss on

25

26    [2] Plaintiff alleges that the Property was sold on December 8, 2011, but the trustee's

27  deed upon sale indicates the sale date was November 30, 2011.  (Compl. (#1-1) at 4;

28  Trustee's Deed (#13-7)).

1  June 25, 2012.

2  **LEGAL STANDARD**

3       The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test

4  the legal sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

5  "[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled

6  to offer evidence to support the claims."  *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th

7  Cir. 1997) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

8       To avoid a Rule 12(b)(6) dismissal, a complaint must plead "enough facts to state a

9  claim to relief that is plausible on its face."  *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017,

10  1022 (9th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim

11  is plausible on its face "when the plaintiff pleads factual content that allows the court to draw

12  the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v.*

13  *Iqbal*, 556 U.S. 662, 678 (2009).  Although detailed factual allegations are not required, the

14  factual allegations "must be enough to raise a right to relief above the speculative level."

15  *Twombly*, 550 U.S. at 555.  All well-pleaded factual allegations will be accepted as true and

16  all reasonable inferences that may be drawn from the allegations must be construed in the

17  light most favorable to the nonmoving party.  *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir.

18  2003).

19       If the court grants a motion to dismiss a complaint, it must then decide whether to grant

20  leave to amend.  The court should freely give leave to amend when there is no "undue delay,

21  bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing

22  party by virtue of allowance of the amendment, [or] futility of amendment."  *Foman v. Davis*,

23  371 U.S. 178, 182 (1962); *see also* FED. R. CIV. P. 15(a).  Generally, leave to amend is only

24  denied when it is clear that the deficiencies of the complaint cannot be cured by amendment.

25  *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

26  **DISCUSSION**

27       In counts one through three of her complaint, Plaintiff has pled claims for fraudulent

28  inducement, intentional misrepresentation, and negligent misrepresentation.  (Compl. (#1-1)

4

at 5-7).    Under Nevada law, a claim of fraudulent inducement and intentional misrepresentation require the plaintiff to establish each of the following elements: (1) a false representation; (2) knowledge or belief that the representation was false (or knowledge that the defendant's basis for making the representation was insufficient); (3) intent to induce the plaintiff to act or refrain from acting; (4) justifiable reliance upon the misrepresentation; and (5) damage resulting from such reliance.  *J.A. Jones Const. Co. v. Lehrer McGovern Bovis, Inc.*, 89 P.3d 1009, 1018 (Nev. 2004).  To state a claim for negligent misrepresentation, the plaintiff must allege: (1) a representation that is false; (2) that the representation was made in the course of the defendant's business or in any action in which he has a pecuniary interest; (3) the representation was for the guidance of others in their business transactions; (4) the representation was justifiably relied upon; (5) that such reliance resulted in pecuniary loss to the relying party; and (6) that the defendant failed to exercise reasonable care or competence in obtaining or communicating the information.  *G.K. Las Vegas Ltd. P'ship v. Simon Prop. Grp., Inc.*, 460 F.Supp.2d 1246, 1262 (D. Nev. 2006).  Pursuant to Rule 9(b), a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake."  To satisfy this standard, a plaintiff must plead "an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.' " *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)).

Plaintiff alleges that Defendants fraudulently stated they would remedy the issue as to the increased payments and that Plaintiff should not remit any payments until further notice. (Compl. (#1-1) at 3).  Under Nevada law, "[t]he mere failure to fulfill a promise or perform in the future, however, will not give rise to a fraud claim absent evidence that the promisor had no intention to perform at the time the promise was made." *Bulbman, Inc. v. Nevada Bell*, 825 P.2d 588, 592 (Nev. 1992); *see also Cundiff v. Dollar Loan Ctr. LLC*, 726 F.Supp.2d 1232, 1238 (D. Nev. 2010) (holding that "a misrepresentation as to future performance cannot be negligent because such a statement is either fraudulent, i.e., the person never held that intention at the time he made the statement, or it was not a misrepresentation at all, the

5

person simply later failed to perform as promised"). Plaintiff here has not alleged any facts that would give rise to the reasonable inference that Defendants had no intention to perform at the time they promised to work with Plaintiff in lowering her mortgage payments. Moreover, this claim is essentially a promissory estoppel claim recast as a claim for misrepresentation. Claims for misrepresentation concern misstatements made regarding existing fact, whereas claims of promissory estoppel concern misstatements regarding promises of future action. *Thoms v. America's Serv. Co.*, 2010 WL 3910083, at *9 (D. Nev. 2010). The statements here were future promises to lower the payments and that the payments would be waived until the payments were lowered. (Compl. (#1-1) at 3). Because these statements were simply future promises and did not relate to any existing fact, and because Plaintiff has not sufficiently pled that Defendants had no intention of fulfilling these promises when they were made, Plaintiff cannot base her misrepresentation claims on these statements.

Plaintiff also contends that Defendants misrepresented that Plaintiff did not qualify for a loan modification when in fact she did qualify under the MHA guidelines and directives. (Compl. (#1-1) at 4). Yet Plaintiff in no way relied on this statement to her detriment. She has not alleged she acted or refrained from acting based on this statement. Furthermore, Plaintiff alleges that the statement was made on December 7, 2011, which was after the Property had been sold and thus could not have been relied upon in any way that would affect the foreclosure. (*Id.*; Trustee's Deed (#13-7)). Plaintiff accordingly has failed to state a claim for fraud and misrepresentation in counts one, two, and three of her complaint.

In count four of the complaint, Plaintiff alleges the foreclosure violated NRS § 107.080 and that Defendants wrongfully foreclosed on the Property. (Compl. (#1-1) at 8). Plaintiff however has failed to allege in the complaint in what way the foreclosure process failed to comply with NRS § 107.080, and in any case, the foreclosure appears to have been statutorily proper. To state a claim for wrongful foreclosure, a plaintiff must show that a lender wrongfully exercised the power of sale and foreclosed upon his or her property when the homeowner was not in default on the mortgage loan. *See Collins v. Union Fed. Sav. & Loan Ass'n*, 662 P.2d 610, 623 (Nev. 1983). Here, Plaintiff's claim for wrongful foreclosure cannot stand because

1
2
3
4
although the home was sold at a trustee's sale,  Plaintiff has admitted that she was in default of the mortgage loan at the time the power of sale was exercised.  (Compl. (#1-1) at 2-4). Plaintiff has accordingly failed to state a claim for violations of NRS § 107.080 and wrongful foreclosure in count four of her complaint.

5
6
7
8
9
10
11
12
13
14
15
16
Plaintiff has however stated a claim for breach of contract in count five.  To succeed on a breach of contract claim, the plaintiff must demonstrate: (1) formation of a valid contract; (2) breach by the defendant; and (3) damages resulting from the breach.  *Saini v. Int'l Game Tech.*, 434 F.Supp.2d 913, 919-20 (D. Nev. 2006).  Plaintiff has alleged there was a valid modification agreement between the parties based on a monthly mortgage payment price of $1,482.01. (Compl. (#1-1) at 3).  Plaintiff timely performed by remitting all payments required under the agreement and Defendants willfully accepted these payments.  (*Id.*)  Defendants however later breached this agreement by increasing the payment amount required and foreclosing on the Property when Plaintiff failed to pay the increased mortgage payments. (*Id.*).  Plaintiff was harmed by this breach of the agreement between the parties as she was unable to make the higher payments and as a result lost her home. (*Id.* at 3-4).  Plaintiff has accordingly stated a claim for breach of contract in count five of her complaint.

17
18
19
20
21
22
23
24
25
26
27
28
Count six alleges Defendants tortiously breached the implied covenant of good faith and fair dealing. (Compl. (#1-1) at 9).  A claim for tortious breach of the implied covenant of good faith and fair dealing requires the existence of a special relationship between the parties.  *Ins. Co. of the West v. Gibson Tile Co., Inc.*, 134 P.3d 698, 702 (Nev. 2006).  Such special relationships arise only "in rare and exceptional cases," such as when a "special element of reliance" exists between the parties.  *Id.*  No special relationship generally exists between debtors and creditors absent exceptional circumstances.  *See Weingartner v. Chase Home Fin., LLC*, 702 F.Supp.2d 1276, 1288 (D. Nev. 2010).  Loan modification agreements also do not create a special relationship between the parties.  *Longoni v. GMAC Mortg.*, 2010 WL 5186091, at *5 (D. Nev. 2010).  No special relationship exists between the parties in this action because Defendants acted as typical lenders and servicers.  Plaintiff has failed to allege facts that would show the existence of a special relationship between the parties, and accordingly

1   this claim is dismissed.

2        Finally, in count seven Plaintiff alleges Defendants contractually breached the implied

3   covenant of good faith and fair dealing.  (Compl. (#1-1) at 9-10).  Nevada law holds that

4   "[e]very contract imposes upon each party a duty of good faith and fair dealing in its

5   performance and its enforcement."  *A.C. Shaw Constr., Inc. v. Washoe Cnty.*, 784 P.2d 9, 9

6   (Nev. 1989) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 205).  To succeed on a cause

7   of action for breach of the covenant of good faith and fair dealing, a plaintiff must show: (1) the

8   plaintiff and defendant were parties to an agreement; (2) the defendant owed a duty of good

9   faith to the plaintiff; (3) the defendant breached that duty by performing in a manner that was

10  unfaithful to the purpose of the contract; and (4) the plaintiff's justified expectations were

11  denied.  *Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 1995).  Here, as noted above, there was

12  a contract between the parties in which both parties had a duty to perform in good faith.

13  Defendants breached this duty by unilaterally raising the monthly mortgage payment after

14  agreeing to and regularly accepting the $1,482.01 payment amount.  Doing so was unfaithful

15  to the purpose of the contract, which was to modify the loan agreement at a reduced monthly

16  payment price, and denied Plaintiff of the justifiable expectations she had in obtaining the

17  agreed upon loan modification if she remitted the $1,482.01 mortgage payments.  Plaintiff has

18  accordingly stated a claim for contractual breach of the implied duty of good faith and fair

19  dealing.

                                **CONCLUSION**

20

21       For the foregoing reasons, IT IS ORDERED that the motion to dismiss (#13) is

22  GRANTED in part as to counts one, two, three, four, and six and DENIED in part as to counts

23  five and seven.

24

25       DATED: This 3rd day of August, 2012.

26

27  _____

28                          United States District Judge

8