**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

SHANNON PARKER,

    Plaintiff,

    v.

BANK OF AMERICA, NA, *et al.*,

    Defendants.

3:12-cv-126-RCJ-VPC

**ORDER**

    This case arises out of a wrongful foreclosure action by Shannon Parker (Plaintiff). Currently before the Court is a Motion for Summary Judgment by Defendants Bank of America, N.A.; Federal Home Loan Mortgage Corporation ("Freddie Mac"); and ReconTrust Company, N.A. (collectively "Defendants"). For the reasons given herein, the Court denies Defendants' Motion for Summary Judgment (Mot. Summ. J., ECF No. 24).

**BACKGROUND**

    Plaintiff Shannon Parker purchased real property located at 3085 Rowland Road, Reno, Nevada 89509 (the "Property") on July 25, 2007. (Deed, ECF No. 13-1). To finance the purchase of the Property, she obtained a $263,000 loan from Countrywide Bank, FSB, which was secured by a deed of trust (the "Deed of Trust"). (Deed of Trust 2, ECF No. 13-2). The Deed of Trust named Countrywide Bank as lender, ReconTrust Company as trustee, and Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee and beneficiary. (*Id.*).

    On March 12, 2009, MERS substituted The Cooper Castle Law Firm as trustee of the Deed of Trust. (Substitution of Trustee, ECF No. 13-3). MERS then assigned all

beneficial interest in the Deed of Trust to Countrywide Home Loans Servicing, LP on March 23, 2009. (Assignment, ECF No. 13-4).

Plaintiff apparently defaulted on the loan secured by the Deed of Trust in November 2008 and The Cooper Castle Law Firm recorded a notice of default on June 8, 2009. (Notice of Default, ECF No. 13-5); (Compl. 2-3, ECF No. 1-1). Plaintiff sought to modify her mortgage pursuant to the Making Homes Affordable ("MHA") guidelines and directives. (Compl. 2-3, ECF No. 1-1). In July 2009, Plaintiff applied for a mortgage modification and entered into a trial period plan pursuant to the MHA guidelines and directives setting her monthly mortgage payments at $1,482.01. (*Id.* at 3). Plaintiff timely remitted all monthly mortgage payments through the trial period. (*Id.*). She was then given an offer for a final modification on December 30, 2009 with monthly payments of $1,856.16. (*Id.*).

The loan modification offer was apparently unacceptable to Plaintiff. (*Id.*) She contacted Bank of America in January 2010 and spoke with a representative, who allegedly instructed Plaintiff not to remit any payments pursuant to the final modification until further notice and that she, the representative, would remedy the issue regarding the high payments. (*Id.*).

During the next 18 months a compromise was never reached and Plaintiff failed to cure her default. (*Id.*). A notice of trustee's sale was then recorded by The Cooper Castle Law Firm on July 25, 2011. (Notice of Trustee's Sale, ECF No. 13-6). The sale date was postponed until November 30, 2011 and Plaintiff was offered a traditional modification on August 17, 2011 with monthly mortgage payments of $1,710.73 and a down payment of $3,907.75 to secure the modification. (Compl. 3, ECF No. 1-1). Plaintiff declined this offer and again attempted to obtain a loan modification she felt was more reasonable. (*Id.* at 3-4). In September 2011, Plaintiff sought professional legal assistance with the modification. (*Id.*). Thereafter, Plaintiff applied for a loan modification pursuant to MHA guidelines, but was told she did not qualify because she failed to accept the final MHA loan modification offered her in December 2009. (*Id.*). The Property was eventually sold at a trustee's sale for $180,000 to Jerry McMillen on November 30, 2011. (Trustee's Deed, ECF No. 13-7).

On December 7, 2012, Believing that the foreclosure sale had not yet occurred, Plaintiff spoke with a Bank of America relationship manager and was told that she did not qualify for an MHA modification due to insufficient income. (Compl. 4, ECF No. 1-1).  Upon further inquiry the same day, Plaintiff was told by the executive office of Bank of America that the income used in determining whether she qualified for a modification was $3,074. (*Id.*)  This was apparently lower than her actual income and allegedly if her actual income had been used she would have qualified for the loan modification pursuant to MHA guidelines. (*Id.* at 5).  Plaintiff alleges these conversation took place before the trustee's sale which she contends took place on December 8th, 2011. (*Id.*).  However, in fact, the trustee's sale was executed on November 30, 2011. (Trustee's Deed, ECF No. 13-7).

Plaintiff filed a complaint in Nevada state court on January 5, 2012 against Bank of America (as successor by merger to Countrywide), Freddie Mac, ReconTrust, and Jerry McMillen. (*Id.* at 1).  The complaint alleges seven causes of action, including: (1) fraud in the inducement; (2) intentional misrepresentation; (3) negligent misrepresentation; (4) violation of NRS § 107.080 and wrongful foreclosure; (5) breach of contract; (6) tortious breach of the implied covenant of good faith and fair dealing; and (7) contractual breach of the implied covenant of good faith and fair dealing.  (*Id.* at 5-10).  Defendant Jerry McMillen, the bonafide purchaser of Plaintiff's property, was voluntarily dismissed by Plaintiff from this action with prejudice on May 23, 2012.  (Stipulation, ECF No. 12); (Order ECF No. 21).

Defendants filed a motion to dismiss the Complaint for failure to state a claim on April 11, 2012.  (Mot. Dismiss, ECF No. 13).  At the conclusion of oral arguments, on June 25, 2012, this Court informed Defendants that their motion to dismiss the Complaint was denied.  Thereafter, on July 27, 2012, Defendants filed this Motion for Summary Judgment and a motion to stay discovery until after the ruling on the Motion for Summary Judgment. (Mot. Summ. J., ECF No. 24); (Mot. Stay Disc., ECF No. 25).  On August 3, 2012, the Court's Order (pursuant to the June 25 oral argument hearing ) dismissed all of Plaintiff's claims except for claim five, breach of contract, and claim seven, contractual breach of the

implied covenant of good faith and fair dealing. (Order, ECF No. 30.). On August 8, 2012, the Court granted Defendant's Motion to Stay Discovery. (Mot. Stay Disc., ECF No. 34). This Court now addresses Defendants' Motion for Summary Judgment (ECF No. 24) on the two remaining breach of contract claims.

## LEGAL STANDARD

The purpose of summary judgment is to dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

When presented with a motion for summary judgment, the court employs a burden-shifting analysis. If the moving party fails to satisfy its initial burden, the court must deny the motion for summary judgment and need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970). A moving party meets its initial burden when it presents evidence "which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)). In such circumstances, "the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *Houghton* at 1537. If the moving party meets its initial burden, "the burden will then shift to the opposing party, who must present significant probative evidence tending to support its claims or defenses." *Intel Corp. v. Hattford Accident & indem. Co.*, 952 F.2d 1551, 1558 (9th Cir.). To show a genuine issue of material fact, the opposing party is not required to establish a material issue of fact conclusively in its favor. Rather, it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). In essence, the nonmoving party cannot avoid summary judgment by solely relying on conclusory allegations that are unsupported by factual data. *See Taylor v.*

*List*, 880 F.2d 1040, 1045 (9th Cir. 1989). At the very threshold, when considering a summary judgment, the court is to evaluate whether there are any genuine factual issues that can be resolved only by a finder of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In reviewing a motion for summary judgment, the court construes the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir.).

## DISCUSSION

This case is distinguished from most wrongful foreclosure cases wherein the homeowner brings an action to stay the foreclosure proceedings until it is determined if foreclosing party is legally authorized to proceed, or, if the foreclosure sale has already occurred, plaintiff often pleads to void the sale. Here, Plaintiff is seeking damages for harm she suffered due to Defendants' alleged breach of contract. (*See* Complaint, 8-9, ECF No. 1-1). The remaining two claims, which survived an earlier Rule (12)(b)(6) motion to dismiss, consist of Plaintiff's well pleaded allegations that Defendant breached a contractual agreement and breached the covenant of good faith and fair dealing required of all contracts. (*Id.*) Specifically, Plaintiff alleges the parties had entered into an agreement for a loan modification wherein Plaintiff performed during the trial period by making timely payments.(*Id.*) However, Plaintiff alleges that Defendants raised the monthly payment amount which effectually changed the terms of the agreement and, thus, breached the covenant of good faith and fair dealings, as well as the agreed upon contract. (*Id.*) In Plaintiff's reply to this motion, she claims to be entitled to actual, punitive, and reliance damages. (*Id.*).

In order to prevail in this Motion for Summary Judgment, Defendants have the burden to show dispositive facts relating to one or more of the required elements in Plaintiff's remaining claims. *See Houghton* at 1537. The elements of a breach of contract claim are: (1) formation of a valid contract; (2) breach by the defendant; and (3) damages resulting from the breach. *Saini v. Int'l Came Tech.*, 434 F.Supp.2d 913, 919-20 (D. Nev. 2006). Defendants argue that Plaintiff has no common law damages under a contractual

or quasi contractual theory. (Mot. Summ. J. 5, ECF No. 24).

**A. Reliance Damages**

Defendants assert that Plaintiff has no reliance damages as a matter of law. (Defs['] Reply Supp. Mot. Summ. J. 5, ECF No. 38).  Reliance damages places the non breaching party in as good of a position as he would have been in had the contract not been made. *See* RESTATEMENT (SECOND) of CONTRACTS § 344(b) (1981).  The non breaching party is entitled to reimbursement of expenses she incurred in reliance on the contract. *Id.* Defendants argue since "Plaintiff lived in a "free house" for nearly three years . . . [she] suffered no compensable out of pocket loss in this case because she paid less than she owed on the original mortgage during the trial period and then nothing until the November 30, 2011 foreclosure." (Defs['] Reply Supp. Mot. Summ. J. 5, ECF No. 38). There are at least two additional issues not addressed by the Defendants.

The first is whether Plaintiff's payments during the trial period were made in reliance on Defendants' promise to provide the loan modification upon completion of the six month trial period, Plaintiff argues the monthly payment of $1482.01, even though less than the original mortgage, was the amount the parties had agreed upon as a trial payment which would then convert into the final loan modification payment amount. (*See* Complaint 3, ECF No. 1-1). If it is proven that Plaintiff would not have made those payments in an attempt to salvage her default, but for her reliance on Defendants' promise that, upon completion, the existing loan would be modified with the same payments as in the trial, she may then be entitled to reliance damages in the amount of those payments and other consequential and incidental damages. *See* RESTATEMENT (SECOND) of CONTRACTS § 344(b) (1981).  Defendants have proffered no evidence showing that Plaintiff's reliance is misplaced and that there was no promise to keep the amount of the payment the same as during the trial period.

The second issue regards the period after Plaintiff spoke to the representative from Bank of America and was instructed not to remit any payments until further notice.  The issue is whether Plaintiff's reliance on the representative's instructions not to pay until

further notice was the actual and proximate cause of Plaintiff's decision to forego other options which could have financially benefitted her–including, but not limited to, remitting payments to Defendants.  Plaintiff claims her reliance on the bank was based on the following events: instruction not to pay, qualification under the final plan, continuing loan modification negotiation, and the bank's postponement of the sale. (*Id.* at 8-9).  Defendants sole argument disputing reliance damages is that Plaintiff actually benefitted financially from this situation because she "lived in a free house for nearly three years." (Defs['] Reply Supp. Mot. Summ. J. 6, ECF No. 38).  Though the fact that she stayed in a house for free for almost three years may be undisputed, and may mitigate damage amounts, there remain material facts that are in dispute.  Ultimately, at issue is whether Plaintiff's reliance on Defendants' promise to perform was the actual and proximate cause of the harm suffered due to Defendants breach.  For example, before the trial period and after, would Plaintiff have taken other measures to remedy the default, but for her reliance on Defendants' initial promise and latter instructions?  For the reasons stated above, the Court finds there are genuine issues of material fact regarding reliance damages.

**B. Expectation Damages**

Defendants argue that because the property was auctioned and sold for $180,000, and plaintiff owed $319,198.15, there was no equity from which Plaintiff could have profited. (*Id.* at 4).  From this fact, Defendants conclude Plaintiff has no expectation damages because she could not have sold the property for a profit. (*Id.*). Expectation damages are awarded to put the non breaching party in as good a position as he would have been in had the contract been performed. RESTATEMENT (SECOND) of CONTRACTS § 344(a). The measure of damages is set forth in the Restatements. "The injured party has a right to damages based on his expectation interest as measured by (a) the loss in the value to him of the other party's performance caused by its failure or deficiency, plus (b) any other loss, including incidental or consequential loss, caused by the breach, less © any cost or other loss that he has avoided by not having to perform. RESTATEMENT (SECOND) of CONTRACTS § 347. Though Defendants' argument is factual, it limits the expectation

7

interest to the moment of their breach and subsequent liquidation of the property.  Had Defendant performed and Plaintiff been allowed to cure the default with the loan modification, and had both parties performed through the remaining of the contract, Plaintiff's expectation interest would necessarily amount to the value of the real property free of a mortgage, unencumbered with debt.  Further, even while the property remains mortgaged, at some point in the future it is just as likely as not that the Plaintiff would be in an equity position on her property; market fluctuations determining the reality of this.  Thus, since expectation damages are to place the non breaching party in as good a position as if the contract had been performed, the amount of those damages is not necessarily limited to the property's value at the time of breach, which in this case, was long before the contract's maturity date. However, Incidental or consequential losses must be foreseeable at the time of contract by the breaching party or they are not recoverable. *See* RESTATEMENT (SECOND) of CONTRACTS § 351(1).  A loss is foreseeable as a probable result of the breach when it follows in the ordinary course of events, or as a result of special circumstances, beyond the ordinary course of events that the party in breach has reason to know. See id. at 351(2)(a)(b).  Here, even though Defendants point to the inequity in the property as evidence Plaintiff suffered no damages because she owed more than the property was worth at the time it was liquidated, the fact that they allegedly breached the loan modification agreement during this time of depressed housing market, Plaintiff's damages may include the loss of profits she otherwise could have realized if the market had not been depressed.  The issue then becomes whether this loss was foreseeable by Defendants.

Defendants cite to a California Court of Appeals real estate wrongful foreclosure case from 1970. (See Defs['] Reply Supp. Mot. Summ. J. 4, ECF No. 38, citing *Munger v. Moore*, 11 Cal. App. 3.d 1, 11 (Cal. Ct. App. 1970)).  Four decades ago, the *Munger* court determined that in an unauthorized sale from a trustee, he or his principle is liable to the mortgagor for the value of the property at the time of the sale in excess of mortgages and liens against the property.  *See Munger*, 11 Cal. App. at 11.  Defendants argue that Plaintiff

8

cannot seek damages for the loss of real property and at the same time ignore the secured debt that burdened the property at the time of the sale. (Defs['] Reply Supp. Mot. Summ. J. 5, ECF No. 38).  Though *Munger* may provide some logical reasoning in a normal real estate market, where a plaintiff is seeking compensation for wrongfully being denied his share of the appreciated property, here, it is neither persuasive, nor binding.  Further, it is not analogous to the facts of this case as it dealt with investors and lenders in commercial property who's primary objective was financial profit.  Where as here, profit may only be a small part of Plaintiff's primary objective as an investment in a home as a primary residence.

     Citing a Nevada Supreme Court case, Defendants argue Plaintiff is not entitled to be placed in a better position because of a breach than she would have enjoyed had the contract been performed. (*Id*. at 4-5, citing *Cheyenne Constr., Inc. v. Hozz*, 720 P.2d 1224 (Nev. 1986)).  Defendants argue since the property was overburdened and Plaintiff could not have sold the property for a profit, by allowing expectation damages Plaintiff will be placed in a better position than if there had been no breach. ((Defs['] Reply Supp. Mot. Summ. J. 5, ECF No. 38).  In *Cheyenne*, a paving contractor, Cheyenne, was sued for breach of contract due to defects caused by partial performance because he did not apply certain seal coats and top coats as per the contract. *See Cheyenne*, 720 P.2d at 1225.  Cheyenne countersued for nonpayment on contract. *Id.*  At trial, Cheyenne was awarded the full contract amount, less the cost of the seal and top coats. *Id*.  Hozz was, in turn, awarded the full contract price he paid for the rework which included the same seal and top coats. *Id*.  The appellate court found that by reducing Cheyenne's award to cover the missing prime and seal coats, and then awarding damages to Hozz to cover the application of the same two treatments, resulted in Hozz receiving the benefit of the treatments without the cost. *Id.* at 1227.  It was held Hozz was not entitled to be placed in a better position because of the breach than he would have enjoyed had the contract been performed. *Id*.  Though this case is persuasive and binding in its holding regarding unjust enrichment in expectation damages with service contracts, this Court finds *Cheyenne* does not limit all

9

possible measures of expectation damages resulting from the breach of a contract when property is overburdened with debt–specifically real property that is one's home and primary residence. If the expectation at the completion of the contract is to own an unencumbered home attached to a parcel of real estate which is freely transferrable by devise or sale, then the value of the property less the mortgage burden at the time of the breach may not fairly or accurately be the only measure of expectation damages.

. This Court finds Defendants have not met the burden to show there are no genuine issues of material fact regarding damages in Plaintiff's breach of contract claim. Therefore, Plaintiff's claim of breach of contract will stand as plead in the Complaint.

The remaining claim alleges that Defendant breached the implied covenant of good faith and fair dealings required of all contracts. (Complaint 9-10, ECF No. 1-1). Nevada law holds that "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *A.C. Shaw Constr., Inc. v. Washoe Cnty.*, 784 P.2d 9, 9 (Nev. 1989) (quoting RESTATEMENT (SECOND) of CONTRACTS § 205). To succeed on a cause of action for breach of the covenant of good faith and fair dealing, a plaintiff must show: (1) the plaintiff and defendant were parties to an agreement; (2) the defendant owed a duty of good faith to the plaintiff; (3) the defendant breached that duty by performing in a manner that was unfaithful to the purpose of the contract; and (4) the plaintiff's justified expectations were denied. *Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 1995). Other than Defendants' prior argument that there are no damages because Plaintiff's home was overburdened with debt, they have not specifically addressed the elements required to show a breach of the covenant of good faith and fair dealing. The Court finds Defendants have not met the burden to show there are no genuine issues of material fact regarding any element of this claim. Therefore, the claim that Defendant breached the implied covenant of good faith and fair dealing will stand as plead in the Complaint.

///
///
///

**CONCLUSION**

For the foregoing reasons, IT IS ORDERED that Defendants' Motion for Summary Judgment is DENIED.

DATED: This 26TH day of November, 2012.

_____
United States District Judge